**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| TANYA SOULE, as Holder of Power of Attorney for MARLENE DO, Her Mother, a Currently Disabled Adult, and LONG DO, Her Husband, | ) ) ) ) | |
|     Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 20-cv-1398 |
| BLESSING HOSPITAL, a corporation; SCOTT HOUGH, M.D.; ISIDOROS VARDAROS, M.D.; BRYAN MOORE, M.D.; SHAILA O'DEAR, R.N.; JASON LITTLE, APRN; KRISTIN HAMPTON, R.N.; REBECCA DENNISON, R.N.; AUSTIN HAKE, M.D., ANGELO LLANA, M.D.; and QUINCY PHYSICIANS & SURGEONS CLINIC, S.C. *d/b/a* QUINCY MEDICAL GROUP, | ) ) ) ) ) ) ) ) ) ) ) ) | |
|     Defendants. | ) | |

**OPINION**

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court is Defendants' Motion for Summary Judgment as to Counts II, III, and V (Doc. 204). For the reasons that follow, Defendants' Motion for Summary Judgment is DENIED.

## I.    INTRODUCTION

This is a medical negligence case brought by Plaintiffs Marlene Do ("Marlene") and her husband, Long Do, against Defendant Blessing Hospital and various nurses and physicians who treated Marlene in December 2019. In Count II, Plaintiffs allege medical negligence claims against Defendants Quincy Physicians & Surgeons Clinic, S.C. d/b/a

Quincy Medical Group, Blessing Hospital, and Isidoros Vardaros, M.D. In Count III, Plaintiffs assert medical negligence claims against Defendants Quincy Medical Group, Blessing Hospital, and Austin Hake, M.D. Count V includes medical negligence claims against Defendants Blessing Hospital and Bryan Moore, M.D.  Defendants Blessing, Hough, O'Dear, Little, Hampton, Llana, and Dennison move for summary judgment on Counts II, III, and IV.

## II.     FACTUAL BACKGROUND

Marlene presented to and was admitted to Blessing Hospital on December 11, 2019. (Doc. 204 at ¶¶ 1-2). Dr. Vardaros, a hospitalist employed by Quincy Medical Group, was assigned as her attending physician. (*Id.* at ¶¶ 3-4). Dr. Hake, a neurologist employed by Quincy Medical Group, was asked to see Marlene in consultation as a neurologist on December 11, 2019. He saw and examined her on December 12, 2019. (*Id.* at ¶¶ 6-9).

Dr. Bryan Moore, a neurologist, was consulted through a telehealth consult on December 11, 2019. (*Id.* at ¶ 10-11). Dr. Moore saw and examined Marlene via telemedicine technology on December 11, 2019. (*Id.* at ¶ 12). Dr. Moore was not employed by Blessing Hospital at the time. (*Id.* at ¶ 13).

When Mrs. Do presented to Blessing Hospital, she signed a consent form containing the following language:

> 2. INDEPENDENT/OTHER PRACTITIONERS/PROVIDERS.
>
> I understand physicians and health care providers who are not employees of Facility are Independent Contractors. They are not agents of Facility. Examples include:

Radiologists... services may be provided by Clinical Radiologists, S.C.,

Pathologists....services may be provided by West Central Pathology Specialists, S.C.,

Anesthesiologists...services may be provided by Quincy Anesthesia Associates, P.C,

Other Physicians/Providers services may be provided by Blessing Physician Services, Quincy Medical Group, or other independent physician/physician groups

I understand these independent providers use their own medical judgment for which this Facility is not responsible. I realize the independent providers will bill me separately from any Facility related charges. I understand some providers may not participate in the same insurance plans/networks as Facility, so I may have a greater financial responsibility for these independent services. I am aware residents, students, clinical observers, and/or medical device representatives may be present and may observe or participate in my care, within their scope of practice, unless I request otherwise.

(*Id.* at ¶ 14).

Marlene has no recollection of Dr. Vardaros, Dr. Moore or a physician she saw on a video screen while at Blessing Hospital. (*Id.* at ¶¶ 15-16). She was at her personal physician, Dr. Ozment's office on December 11, 2019, when she began to experience stroke symptoms. (*Id.* at ¶ 17). He told her that she needed to go to the hospital to get treatment and called the ambulance for her. (*Id.* at ¶ 18). The ambulance transported her to Blessing Hospital. (Doc. 214 at ¶ 21). Marlene recalls being at Dr. Ozment's office and arriving at Blessing Hospital. (Doc. 204 at ¶ 19). She did not decide which hospital she would be transported to and did not have a relationship with any of the treatment providers from Blessing Hospital prior to December 11, 2019. ( Doc. 214 at ¶¶ 22-23).

None of the subject providers told Marlene they were independent contractors and/or not employed by Blessing Hospital. (*Id.* at ¶ 24).

Defendants contend Blessing is entitled to summary judgment on Counts II, III, and V, because none of the three physicians were apparent agents of Blessing Hospital as a matter of law. Plaintiffs argue there are genuine issues of material fact regarding the agency of each of the physicians, thereby precluding the entry of summary judgment.

## III.    DISCUSSION

### A. Legal Standard

Summary judgment is appropriate if the motion is properly supported and "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those that might affect the outcome of the suit, and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Biggs v. Chic. Bd. of Educ.*, 82 F.4th 554, 559 (7th Cir. 2023) (internal quotation marks and citation omitted). The Court views the evidence and construes all reasonable inferences in favor of the non-movant. *Driveline Systems, LLC v. Arctic Cat, Inc.*, 936 F.3d 576, 579 (7th Cir. 2019). To create a genuine factual dispute, however, any such inference must be based on something more than "speculation or conjecture." *See Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012) (citation omitted). "The court does not assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence." *Driveline Systems*, 936 F.3d at 579 (internal quotation marks omitted).

## B. Apparent Agency

In seeking summary judgment, Defendants contend it is undisputed that Drs. Hake, Moore, and Vardaros were not agents of Blessing Hospital. A hospital is not vicariously liable for the negligent acts of a physician who is an independent contractor "unless the patient knows, or should have known, that the physician is an independent contractor." *Gilbert v. Sycamore Mun. Hosp.*, 156 Ill.2d 511, 524 (1993). A hospital is liable under the doctrine of apparent authority if the plaintiff shows that: "(1) the hospital, or its agent, acted in a manner that would lead a reasonable person to conclude that the individual who was alleged to be negligent was an employee or agent of the hospital; (2) where the acts of the agent create the appearance of authority, the plaintiff must also prove that the hospital had knowledge of and acquiesced in them; and (3) the plaintiff acted in reliance upon the conduct of the hospital or its agent, consistent with ordinary care and prudence." *Id.* at 525. The court cautioned "that liability attaches to the hospital only where the treating physician is the apparent or ostensible agent of the hospital. If a patient knows, or should have known, that the treating physician is an independent contractor, then the hospital will not be liable." *Id.* at 522-23; *see also Petrovich v. Share Health Plan of Ill., Inc.*, 188 Ill.2d 17, 34 (Ill. 1999) ("Vicarious liability under the apparent authority doctrine will not attach, however, if the patient knew or should have known that the physician providing treatment is an independent contractor.").

"The first two elements of apparent authority are often grouped together and referred to as the holding out element, while the third element is often referred to as the justifiable reliance or the reliance element." *First Midwest Bank v. Ottawa Regional Hospital*

1:20-cv-01398-CRL-DJQ     # 290     Filed: 09/11/25     Page 6 of 11

*and Healthcare Center*, 242 N.E.3d 934, 945-46 (3d Dist. 2023). In considering the holding out element, courts focus on what the plaintiff knew or should have known. *Id.* at 946. A plaintiff cannot satisfy the holding out element if she knew or should have known that the physician was an independent contractor. *Id.* "[I]f the patient is in some manner put on notice of the independent contractor status of the physician at issue, the holding out element cannot be met and vicarious liability under the apparent authority doctrine will not apply." *Id.* In determining whether the holding out element has been satisfied, a key factor is whether the plaintiff signed a hospital consent form that included "independent contractor disclaimer language that was clear, unambiguous, and conspicuous." *Id.*

In order for a court to find "holding out" on the part of the hospital, "it is not necessary that there be an express representation by the hospital that the person alleged to be negligent is an employee. Rather, this element is satisfied if the hospital holds itself out as a provider of care without informing the patient that the care is provided by independent contractors." *York v. Rush-Presbyterian-St. Luke's Med. Ctr.* 222 Ill.2d 147, 185 (2006) (citing *Gilbert*, 156 Ill.2d at 525). The third element concerning reliance is satisfied "if the plaintiff relies upon the *hospital* to provide medical care, rather than upon a specific physician." *Id.* (emphasis in original). The Illinois Supreme Court explained:

> Except for one who seeks care from a specific physician, if a person voluntarily enters a hospital without objecting to his or her admission to the hospital, then that person is seeking care from the hospital itself. An individual who seeks care from the hospital itself, as opposed to care from his or her personal physician, accepts care from the hospital in reliance upon the fact that complete emergency room care—from blood testing to radiological readings to the endless medical support services—will be provided by the hospital though its staff.

Page 6 of 11

*Id.* at 185 (quoting *Gilbert*, 156 Ill.2d at 525-26).

In considering whether the elements of apparent authority have been met, the Court first notes that Drs. Hake and Moore are neurologists while Dr. Vardaros is a hospitalist. The consent form signed by Marlene does not mention neurologists or hospitalists or the role of those doctors at Blessing Hospital. However, the consent form does state that physicians who are not Blessing employees are independent contractors and not agents. It further provides that services of radiologists, pathologists, and anesthesiologists may be provided by entities other than Blessing Hospital. Moreover, the services of other physicians may be provided by Blessing Physician Services or other entities.

In *Terry v. OSF Healthcare Systems*, 2018 WL 305549 (3d Dist. 2018), the Illinois Appellate Court observed that while signed consent forms are important factors in considering the holding out element, such forms are not dispositive. *Id.* at *6. The language of the consent form can be critical. *Id.* The court explained:

> Here, the language of the consent form is not clear and does not specifically mention the treating physicians or the service group. Although Heather signed a form, the language pertaining to the employment status of OSF physicians did not clearly state that Dr. Reddy, a pediatric ophthalmologist, and Dr. Hocker and Dr. Macwan, neonatal specialists, were independent contractors. Heather signed a form that stated "certain physicians" on the medical staff at the hospital "are independent contractors and not employees of the hospital." It further provided that OSF does not "does not employ all of the physicians who treat a patient." Such a disclaimer is ambiguous in that the patient may assume some, all, or none of the treating physicians are independent contractors. Moreover, the term "certain physicians" may or may not include the specialists who treated Falon.

*Id.* at *7. Therefore, the court determined there was a factual dispute regarding whether plaintiffs were adequately informed the physicians were independent contractors. *Id.*

In *Tancrell v. Freeport Memorial Hosp., Inc.*, 2008 WL 11626163 (N.D. Ill. 2008), the Northern District of Illinois considered whether the consent form signed by the plaintiff evinced some type of "holding out" of the physician. *Id.* at *3. The court determined a consent form which provided that "some" of the physicians at the hospital were independent contractors was not enough to establish that plaintiff should have known that her treating surgeon was an independent contractor. *Id.* The court contrasted the consent form with those in other cases that clearly specified the alleged negligent physician's independent contractor status in noting that the form plaintiff signed is "ambiguous with respect to the legal status of surgeons" at the hospital. *Id.* "The consent form contains a clear disclaimer with respect to physicians in the Emergency Department, Imaging Department, and Anesthesia Department, and then indicates that, for the remainder of the medical staff, only 'some physicians' are independent contractors." *Id.* While the language informed the plaintiff that her treating surgeon might be an independent contractor, it also indicated that he might be an employee or agent of the hospital. *Id.* The court determined that *Gilbert* "requires more than notice of the possibility that a physician is an independent contractor; it requires evidence that the plaintiff either knew or should have known that the physician was an independent contractor in order for the hospital to avoid liability under an apparent agency theory." *Id.* (citing *Gilbert*, 156 Ill.2d at 522). Because the consent form did not provide clear notices of the treating

surgeon's independent contractor status, the court held there was a factual dispute on the issue which precluded the entry of summary judgment. *Id.* at *3.

The Court finds the reasoning in *Terry* and *Tancrell* to be persuasive. As in those cases, the consent form here does not specify the treating physicians or their specialties. The consent form indicates that the services of radiologists, pathologists, and anesthesiologists may be provided by other entities. It says nothing about hospitalists or neurologists. More generally, the consent form suggests that some physicians are employees of Blessing Hospital while others are independent contractors and not agents of the facility. The consent form further provides examples of certain independent contractors that may provide services—including Quincy Medical Group, the entity that employes both Drs. Vardaro and Hake. Thus, Plaintiff was on notice that Drs. Vardaro, Hake, and Moore might be Blessing employees or might be independent contractors. Under *Gilbert*, a hospital can be held vicariously liable under the doctrine of apparent authority "unless the patient knows, or should have known, that the physician is an independent contractor." *Gilbert*, 156 Ill.2d at 524. Because the consent form did not provide clear notice of the independent contractor status of Drs. Vardaro, Hake, and Moore, the Court finds there is a genuine issue of material fact as to whether Plaintiff knew or should have known those physicians were independent contractors.

The Court now turns to the "justifiable reliance" element, which requires Plaintiff to show she "relie[d] upon the hospital to provide complete emergency room care, rather than upon a specific physician." *Gilbert*, 156 Ill.2d at 526. It is undisputed that Marlene was at her personal physician's office when she began to experience stroke symptoms

and was told she would need to go to the hospital. After Dr. Ozment called for an ambulance, Marlene was transported to Blessing Hospital. She did not choose which hospital she would be transported to. Defendants note that Marlene recalls being at her physician's office, being told that her doctor was going to call an ambulance and being taken to Blessing Hospital. Thus, Defendants contend Marlene could have objected to being taken to Blessing Hospital. According to Marlene's deposition testimony, however, she was slurring her words and having difficulty expressing what she wanted to say in response to Dr. Ozment's question. Given these circumstances, the Court concludes there is a factual dispute regarding whether Marlene was capable at the time of giving meaningful consideration to treatment options. More specifically, there is a genuine issue of material fact as to whether she justifiably relied on Blessing Hospital for its comprehensive care. Therefore, the Court finds Plaintiff has satisfied the reliance element.

IV.    **CONCLUSION**

For the reasons stated herein, the Court concludes there are factual disputes regarding whether Blessing Hospital held itself out as the provider of the medical services and whether Plaintiff justifiably relied on Blessing to provide medical care. When all reasonable inferences are drawn in favor of Plaintiff, there is a factual dispute as to whether Drs. Hake, Moore, and Vardaros were agents of Blessing Hospital. Therefore, Defendants' Motion for Summary Judgment as to Counts II, III, and V [Doc. 204] is DENIED.

ENTER:   September 11, 2025

COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE