IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| TANYA SOULE, as Holder of Power of Attorney for MARLENE DO, Her Mother, a Currently Disabled Adult, and LONG DO, Her Husband, | ) ) ) ) ) | |
|     Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 20-cv-1398 |
| BLESSING HOSPITAL, a corporation; SCOTT HOUGH, M.D.; ISIDOROS VARDAROS, M.D.; BRYAN MOORE, M.D.; SHAILA O'DEAR, R.N.; JASON LITTLE, APRN; KRISTIN HAMPTON, R.N.; REBECCA DENNISON, R.N.; AUSTIN HAKE, M.D., ANGELO LLANA, M.D.  and QUINCY PHYSICIANS & SURGEONS CLINIC, S.C. *d/b/a* QUINCY MEDICAL GROUP, | ) ) ) ) ) ) ) ) ) ) ) | |
|     Defendants. | ) | |

## OPINION

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court is Defendants' Motion to Bar the Testimony of Linda Schwieger, RN, CNLCP, CBIS. (Doc. 205). For the reasons that follow, Defendants' Motion is Granted in part and Denied in part.

## I.    BACKGROUND

This is a medical negligence case filed by Plaintiffs Tanya Soule, as holder of Power of Attorney for Marlene Do, her mother, a currently disabled adult, and Long Do, her husband. (Doc. 205 at 1). Plaintiffs allege Defendants were negligent in failing to timely

diagnose and manage Marelene's ischemic stroke on December 11, 2019. Defendants deny they were negligent and deny proximately causing any injury to Marlene.

Defendants Blessing Hospital; Scott Hough, M.D.; Shaila O'Dear, R.N.; Jason Little, APRN; Kristin Hampton, R.N.; Angelo Llana, M.D.; and Rebecca Dennison, R.N. move under Federal Rule of Evidence 702 to bar Plaintiffs' expert witness, Linda Schwieger, RN, CNLCP, CBIS, from testifying because she is not qualified to testify on future costs derivative of medical coding decisions and her life care plan is unsupported by medical evidence and fails to account for preexisting injuries. (Doc. 205 at 5-16). Defendants further note Nurse Schwieger's testimony has been barred in other cases for these reasons. In response, Plaintiff claims she is qualified by experience and her life care plan is supported by medical evidence and the opinions of Marlene's treating physicians.

Defendants note Plaintiffs' Rule 26 Disclosure as to Nurse Schwieger and her life care plan contemplates various items and medical services that Plaintiffs claim Marlene may need in the future due to the injuries she sustained as a result of her stroke. Nurse Schwieger also assigned a cost to each of the various items and medical services in the life care plan. To arrive at her cost estimates for several categories within her life care plan, Nurse Schwieger independently selected medical codes.

Plaintiffs state Nurse Schwieger is a certified nurse life care planner and certified brain injury specialist who has spent the last 19 years developing life care plans. (Doc. 217). She is a member of the American Association of Nurse Life Care Planners, where she spent two years as the National Conference Chairperson, a member of the American

Association of Legal Nurse Consultants, where she served as President of her chapter, and a member of the International Association of Rehabilitation Professionals.

Defendants move to exclude Nurse Schwieger's testimony under Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). Plaintiffs argue Nurse Schwieger relied on the medical opinions of Dr. Stanley Mathew, a board-certified physical medicine and rehabilitation physician who has cared for thousands of stroke patients over the last 15 years, when drafting the life care plan. Dr. Mathew has extensive expertise in the rehabilitation of stroke patients, working with a multidisciplinary team including physical therapy, occupational therapy, speech therapies, and medical psychology recreational therapy. Plaintiffs contend Dr. Mathew's opinions, along with Nurse Schwieger's review of Marlene's medical records, review of the deposition testimony of her treating physicians, her nursing assessment of Marlene, and Nurse Schwieger's own education, training, and experience, all form the factual basis of her life care plan. Plaintiffs contend the life care plan is well supported by the evidence in this case.

## II.    DISCUSSION

In seeking exclusion, Defendants note Nurse Schwieger conceded through her discovery deposition that she has no training, education, or experience in medical coding. Defendants claim this is significant because her cost opinions related to a portion of her life care plan derive from her independent medical coding decisions. Additionally, because her opinions are not supported by independent admissible evidence, Nurse Schwieger's future cost opinions are irrelevant. Finally, Nurse Schwieger failed to

account for whether Marlene would have needed the items and services in her life care plan due to her preexisting conditions.

### A. Legal Standards

Federal Rule of Evidence 702 states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the Supreme Court interpreted an earlier version of Rule 702 and explained that it imposes a special gatekeeping obligation on trial judges with regard to scientific testimony. The district court's "gatekeeping obligation . . . applies not only to testimony based on scientific knowledge, but also to testimony based on technical or other specialized knowledge." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999); *see also Lees v. Carthage Coll.*, 714 F.3d 516, 521 (7th Cir. 2013) ("[T]he *Daubert* analysis applies to *all* expert testimony under Rule 702, not just scientific testimony."). While the scientific or technical evidence need not have general acceptance, the district court must ensure that the evidence is relevant and reliable before admitting it. *See Daubert*, 509 U.S. at 588-89; *see also United States v. Truitt*, 938 F.3d 885, 889 (7th Cir. 2019) (noting that judges act as gatekeepers "to ensure that expert testimony is both relevant and reliable.")

In acting as a gatekeeper, district courts must evaluate: "(1) the proffered expert's qualifications; (2) the reliability of the expert's methodology; and (3) the relevance of the expert's testimony." *Kirk v. Clark Equip. Co.*, 991 F.3d 865, 872 (7th Cir. 2021). To be relevant, expert testimony must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Courts consider the reliability of an expert's opinion by making "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid." *Anderson v. Raymond Corp.*, 61 F.4th 505, 509 (7th Cir. 2023) (quoting Daubert, 509 U.S. at 592-93). Some factors to consider include: "(1) whether the particular scientific theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique has achieved general acceptance in the relevant scientific or expert community." *Id.* at 509 (internal quotation marks and citations omitted).

Rule 702 requires a flexible inquiry and recognizes that the accuracy of proposed expert testimony can be explored adequately via the normal adversarial process of "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Lees*, 714 F.3d at 526 (quoting *Daubert*, 509 U.S. at 596). It is "the soundness and care with which the expert arrived at her opinion" that is the focus of the inquiry and not "the ultimate correctness of the expert's conclusions." *Anderson*, 61 F.4th at 510.

**B. Qualifications to Testify on Future Costs Using Medical Coding Decisions**

Defendants claim Nurse Schwieger is not qualified to testify on future costs derivative of medical coding decisions in large part because she has no training, education, or experience in making medical code decisions. Her experience only involves reviewing medical records and medical invoices for the past 20 years. Defendants contend that, despite Nurse Schwieger's lack of training, education, or experience in the world of medical coding, she selected the second highest code and cost available for every physician service in Marlene's life care plan.

Plaintiffs contend that, while she is not a certified professional coder, her experience qualifies her an expert in the field. While she had no experience coding when working as a nurse, Schwieger has reviewed medical codes throughout her decades of experience in determining her opinions regarding life care planning and she uses medical codes in conjunction with drafting her opinions on life care issues and costs.

Defendants note Nurse Schwieger also selected medical codes for "ER Visits for Falls/Fractures to Stroke Symptoms" and associated "Hospital Admission for Further Stroke Assessment 2.5-6.6 days" and "Post-Hospitalization Inpatient Rehabilitation Program x2 wks." Nurse Schwieger speculated that Marlene will go to the Emergency Department secondary to a fall once a year for the remainder of her life, will be hospitalized at least three times for 2.5 to 6.6 days, and will require post-hospitalization inpatient rehabilitation. As for the resulting costs, Nurse Schwieger selected the medical codes she believes might be selected for each of those hospitalizations. She acknowledged Marlene had never been hospitalized for a fall and thus had no reference point for medical costs resulting from falls.

Defendants state that, even though Nurse Schwieger could have selected several different medical codes for the various items included in her life care plan, she selected the highest or second highest medical code for the item and service contained therein. Defendants contend Nurse Schwieger lacked the qualifications to select the appropriate medical code relating to cost for medical services she speculates Marlene may need in the future—such as those relating to hospital visits for stroke assessment and post-hospitalization inpatient rehabilitation. The same type of process was used by Nurse Schwieger in selecting medical codes for services Marlene may need such as physical therapy, occupational therapy, and speech language pathology therapy.

Nurse Schwieger testified she does not always pick the highest or second highest level of code. The inquiry is very individualized based on the information about the patient. Nurse Schwieger testified she selected the second highest code based on what she knows about Marlene and her issues.

Defendants contend Nurse Schwieger's life care plan opinion associated with (1) Physician Care; (2) Diagnostics; and (3) Physical, Occupational, and Speech-Language Therapies should be excluded because, based on the complexity of medical coding and given that she has not been trained or educated on how to select an appropriate medical code, she is not qualified under *Daubert* to render such opinions.

Plaintiffs assert Defendants' arguments concerning Nurse Schwieger's qualifications to review medical codes and opine on life care planning and future costs based on those codes are better suited for cross-examination rather than as a basis for excluding her testimony. Nurse Schwieger reviewed Mrs. Do's medical records and bills,

created a chronology, conducted a video nursing assessment, and consulted with Dr. Stanley Mathew in drafting the life care plan.

Given the nature and complexity of medical coding and the fact that Nurse Schwieger has no training, education, or experience in selecting medical codes for a patient, the Court concludes Nurse Schwieger lacks the requisite specialized knowledge under Rule 702 to select medical codes. Significantly, Nurse Schwieger did not base the medical codes she selected on codes that had previously been selected by healthcare providers. Instead, she independently selected medical codes that she believes may be selected by Marlene's future healthcare providers. Her decision as to the appropriate code was "based on the complexity of what I know about [Marlene] and her issues." However, Nurse Schwieger admitted she is not qualified to make medical diagnoses and must rely upon decisions made by Marlene's treating physicians.

Therefore, the Court grants Defendants' motion to the extent it seeks the exclusion of Nurse Schwieger's life care plan opinions premised upon her medical coding selections: (1) Physician Care, (2) Diagnostics, and (3) Physical, Occupational, and Speech-Language Therapies.

### C. Medical Evidence in Support of Life Care Plan

Defendants next contend Nurse Schwieger's life care plan is unsupported by medical evidence and fails to account for preexisting injuries. Specifically, she failed to collaborate with a physician for most of the opinions and did not account for Marlene's preexisting conditions in developing her life care plan. In preparing the life care plan, Nurse Schwieger reviewed Marlene's medical records and reviewed the deposition

testimony of two of Marlene's providers, Dr. Dillon, her neurologist, and Dr. Bowen, her former primary care physician. Nurse Schwieger also spoke to Plaintiff's retained expert, Dr. Stanley Mathew. She also conducted a video nursing assessment of Marlene but did not communicate with any of Marlene's treating providers.

Defendants' reliance on *Hopey v. Spear*, 2016 WL 9665159 (C.D. Ill. Apr. 18, 2016), wherein Judge Bruce barred some of Nurse Schwieger's proposed expert testimony because it was not supported by a medical provider, is misplaced because unlike in this case, she did not collaborate with a medical doctor in *Hopey*. *Id.* at *3-6; *see also Eliason v. Superior Refining Co., LLC*, 2021 WL 4820252, at *6-7( W.D. Wi. Oct. 15, 2021) (limiting Schwieger's testimony to opinions supported by physician recommendations or medical needs).

While Defendants are critical of the extent of Dr. Mathew's review of the life care plan and the fact that she did not talk to any treating providers, Dr. Mathew testified that he spent many more hours than one 30-minute phone conversation with Nurse Schwieger reviewing the life care plan. While he generally agreed with the opinions contained therein, Dr. Mathew also testified that he recommended certain additions which were added to the life care plan for Marlene. Nurse Schwieger also reviewed Marlene's medical records and the deposition testimony of two of her medical providers. Based on Nurse Schwieger's qualifications and the role of Dr. Mathew, the Court concludes that the information is sufficiently reliable and relevant to assist the factfinder.

Defendants further note Nurse Schwieger was aware that, prior to her December 2019 stroke, Marlene had a debilitating condition known as rheumatoid arthritis, which

resulted in her being on social security disability for two decades. Marlene's treating rheumatologist testified that her condition would cause her difficulties completing all of her activities of daily living. Defendants contend Nurse Schwieger and Dr. Mathew failed to consider Marlene's preexisting condition. Dr. Mathew testified that, regardless of the stroke but due to the rheumatoid arthritis, Marlene may have required some assistance particularly as she aged. He speculated it may not be until much later that she would need assistance like a home health aide. Although Plaintiffs appear not to have disclosed any physicians to differentiate which items and services in Nurse Schwieger's life care plan would have been needed if Marlene had not suffered a stroke, Dr. Mathew's testimony touches on the issue. Thus, the Court declines to bar Nurse Schwieger's testimony as to the life care plans. Of course, Defendants may explore what they believe to be any weaknesses with the testimony on cross-examination, in addition to objecting to any opinions offered without a proper evidentiary basis.

### III.    CONCLUSION

For the reasons stated herein, Defendants' Motion to Bar the Testimony of Linda Schwieger, RN, CNLCP, CBIS (Doc. 205) is GRANTED in part and DENIED in part, as provided in this Order.

ENTER:  September 19, 2025

_____

COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE